FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

2005 OCT -5  PM 2: 49

DUBLIN DIVISION

CLERK _L. Ilbuden_
SO. DIST. OF GA.

PIERRE SHARIF CONEY,           )
                               )
            Petitioner,        )
                               )
      v.                       )      CV 305-058
                               )      (Formerly CR 303-014)
UNITED STATES OF AMERICA,      )
                               )
            Respondent.        )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The above-captioned case comes before the Court on Petitioner Pierre Sharif Coney's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Now, for the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the United States of America ("the government").

### I. PROCEDURAL BACKGROUND

Petitioner was named in a three-count indictment stemming from events that occurred in February and March of 2001. United States v. Coney, CR 303-014 (S.D. Ga. Aug. 14, 2003), *hereinafter* "CR 303-014," doc. no. 1. Count 1 charged that on February 20, 2001, Petitioner distributed 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Id. Count 2 charged that on February 28, 2001, Petitioner distributed 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Id. Count 3 charged that on March 8,

2001, Petitioner distributed 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Id. According to the government's penalty certification, along with various fines, periods of supervised release and special assessments, Petitioner faced a term of imprisonment of not less than five years, nor more than forty years, on each count. CR 303-014, doc. no. 2.

The Court appointed counsel to represent Petitioner, Mr. Joseph E. Rossman. With Mr. Rossman's assistance, Petitioner entered into a negotiated plea agreement with the government whereby he agreed to plead guilty to Count 2 of the indictment. CR 303-014, doc. no. 25. In exchange for the guilty plea, the government agreed, *inter alia*, to dismiss the remaining counts of the indictment, not object to Petitioner receiving an acceptance of responsibility reduction provided that Petitioner satisfied certain enumerated conditions, and to file a Motion for Decrease in Offense Level pursuant to USSG § 3E1.1(b)(2), provided that Petitioner satisfied certain enumerated conditions. Id. at 1-2.

The plea agreement also contained the following provision:

> The defendant further advises the Court that the defendant under-stands that the U.S. Probation Office will prepare a presentence investigation report for the Court, and that the U.S. Probation Office will consider all of defendant's conduct related to the offense to which he is pleading, which may include conduct related to Counts which have not been charged in the Information [sic] or for which the defendant was acquitted, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence.

Id. at 9. The plea agreement further provided:

> The defendant represents to the Court that the defendant has had the services of an attorney the defendant believes to be competent; that the defendant has met with said attorney on a sufficient number of occasions and for a sufficient period of time to discuss the defendant's case and receive advice; that the defendant has been truthful with his attorney and related all

2

information of which the defendant is aware pertaining to the case; that the defendant and defendant's attorney have discussed possible defenses, if any, to the charges in the indictment, including the existence of any exculpatory or favorable evidence or witnesses, discussed the defendant's right to a public trial by jury or by the Court, the right to the assistance of counsel through the proceedings, the right to call witnesses in the defendant's behalf and compel their attendance at trial by subpoenae, the right to confront and cross-examine the government's witnesses, the defendant's right to testify in the defendant's own behalf, or to remain silent and have no adverse inferences drawn from the defendant's silence; and that the defendant, with the advice of counsel, has weighed the relative benefits of a trial by jury or by the Court versus a plea of guilty pursuant to this Agreement, and has entered this Agreement as a matter of the defendant's free and voluntary choice, and not as a result of pressure or intimidation by any person.

Id. at 10-11 (emphasis added). Petitioner acknowledged on December 20, 2003, under penalty of perjury, that he read and understood the plea agreement. Id. at 13. The Honorable Dudley H. Bowen, Jr., United States District Judge, accepted Petitioner's guilty plea on February 3, 2004. CR 303-014, doc. no. 26.

After Petitioner pleaded guilty, a presentence investigation report ("PSI") was prepared. The probation officer recommended that Petitioner be held accountable for distributing a net weight of 59.8 grams of crack cocaine.[1] PSI ¶ 7. The probation officer also recommended that Petitioner be given a three-level reduction for acceptance of responsibility as defined in USSG § 3E1.1(a) and noted that the government had advised that it would be making a motion that Petitioner receive an additional one-level reduction under USSG § 3E1.1(b) for timely notifying authorities of his intention to plead guilty. PSI ¶ 11. The range of imprisonment under the Sentencing Guidelines was 108 to 135 months. PSI ¶ 64. On

---

[1]This total amount was comprised of the following crack cocaine transactions: 8 grams on February 20, 2001, 27.2 grams on February 28, 2001, and 24.6 grams on March 8, 2001. PSI ¶¶ 4-6.

April 30, 2004, Judge Bowen sentenced Petitioner to 80 months of imprisonment, 5 years of supervised release, and a $100 special assessment; the judgment was entered on the docket on May 3, 2004.  CR 303-014, doc. no. 29.

Petitioner did not file a notice of appeal.  However, in his § 2255 motion dated March 8, 2005, Petitioner raises six categories of issues which he believes entitles him to relief.  The majority of the issues raised within these six categories revolve around Petitioner's belief that he was improperly sentenced based on all of his relevant conduct rather than just on the conduct alleged in the count of the indictment to which he pleaded guilty.  The categories upon which Petitioner stakes his claims include:  (1) use of a defective indictment; (2) prosecutorial misconduct based on use of an improper indictment; (3) constructive amendment of the indictment by the U.S. Probation Officer who prepared the PSI; (4) errors made by the trial court, including not recognizing alleged problems with the indictment and failing to advise Petitioner of the rights he was waiving with his guilty plea; (5) ineffective assistance of counsel based on failing to properly prepare for the case, not objecting to certain alleged errors, not negotiating a favorable plea agreement, not advising Petitioner about the merits and/or consequences of entering a guilty plea, and not filing an appeal; and (6) entry of an unknowing and involuntary guilty plea.

Under Montemoino v. United States, 68 F.3d 416, 418 (11th Cir. 1995) (*per curiam*), if Petitioner did ask Mr. Rossman to timely file an appeal, he should be granted permission to file an untimely appeal of his sentencing issues; this is so even if it does not appear that Petitioner actually has any viable grounds to appeal his sentence.  See Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996).  Accordingly, the Court held an evidentiary

hearing on September 1, 2005, to determine whether Petitioner had asked Mr. Rossman to file a notice of appeal.[2]

## II. ANALYSIS

### A.    Request for Direct Appeal

In his § 2255 motion, Petitioner states that Mr. Rossman failed to advise him that he had a right to appeal, failed to timely file a notice of appeal, and failed to file a direct appeal. Doc. no. 1, Memo., pp. 9-10, 25.  At the hearing, Petitioner testified that he first told Mr. Rossman that he wanted to appeal when they were going over the plea agreement.  According to the hearing exhibits, Petitioner signed the plea agreement in December of 2003 (Exs. 2-3), well in advance of his April 30, 2004 sentencing.  When pressed at the hearing to identify any time after sentencing that he had asked Mr. Rossman to file an appeal, Petitioner could not identify any such request; he could only point to a letter dated February 23, 2005, in which Petitioner asks for the "status of [his] appeal." Ex. 1.  Petitioner testified that he did not contact Mr. Rossman any sooner than February of 2005 about an appeal because he was trying to obtain "some papers," including transcripts, that he believed were necessary, and he thought that he could appeal at any time.

At the hearing, Mr. Rossman testified that weeks prior to Petitioner entering his guilty plea, Petitioner had raised the issue of wanting to appeal the quantity of drugs with which he had been charged as selling, but as Mr. Rossman pointed out, any discussion of appeal at such an early stage of the case was premature.  Moreover, that issue was a non-starter once

---

[2]The Court appointed Kimberly L. Copeland, Esquire, to represent Petitioner at the hearing.  Pursuant to the Court's Order of August 19, 2005 (doc. no. 7), certain other ineffective assistance of counsel claims were also explored at the September 1st hearing.

Petitioner decided to plead guilty and to sign a plea agreement admitting that he "distributed a total of approximately 60 grams of 'crack' cocaine between February and March 2001" that would be taken into account at sentencing. CR 303-014, doc. no. 25, p. 8. Mr. Rossman acknowledged that at the sentencing hearing, Petitioner had voiced his displeasure with the term of imprisonment he had received and brought up the issue of appealing after having heard Judge Bowen state that there was a ten-day period within which an appeal could be filed. However, Mr. Rossman testified that he advised in light of the guilty plea agreement, the best thing Petitioner could do would be to take advantage of the programs available in prison and get his life in order. That was the end of the discussion. Mr. Rossman was confident in his testimony that Petitioner did not ask him to file an appeal.[3]

When the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (per curiam). Based on the evidence before the Court and the testimony presented at the evidentiary hearing, the Court specifically credits the testimony of Mr. Rossman over that of Petitioner. Mr. Rossman negotiated a favorable plea agreement that resulted in a sentence of imprisonment (80 months) that was twenty-eight months less than the low end of the sentencing range identified in the PSI (108

---

[3]Mr. Rossman acknowledged at the hearing that he erred in his response to Petitioner's February 23, 2005 correspondence when he stated that the term of his appointment did not cover appellate proceedings. Hearing Ex. 4. Notably, however, Mr. Rossman's response starts with the statement that Petitioner never requested that an appeal be filed on his behalf. Id. That statement is completely consistent with his hearing testimony that he had not been asked to file an appeal.

to 135 months); moreover, Petitioner was facing a statutory penalty of five to forty years on each of the three counts with which he had originally been charged.

Furthermore, Petitioner had no evidence, documentary or otherwise, to support his testimony that he had asked Mr. Rossman to file an appeal. Indeed, Petitioner's argument in his written § 2255 motion is contradictory in that he complains Mr. Rossman failed to advise Petitioner that he had a right to appeal. Doc. no. 1, p. 4; Memo., pp. 9-10. If Petitioner had not been advised of his right to appeal, how, then, could he have made a request for an appeal that was not honored? In addition, Petitioner concedes that he brought up the issue of an appeal well before he pleaded guilty; he cannot pinpoint a time subsequent to sentencing but prior to his February 23, 2005 letter when he specifically asked Mr. Rossman to file an appeal. The evidence simply does not support Petitioner's version of events.

Finally, the Court cannot ignore Petitioner's self-interest in regaining the right to a direct appeal. That is, in the Eleventh Circuit, a sentence imposed pursuant to the Sentencing Guidelines - guidelines that the Supreme Court has ruled to be incompatible with the Sixth Amendment in light of their mandatory application, see Booker v. United States, 543 U.S.-, 125 S. Ct. 738 (2005) - cannot be challenged in collateral proceedings. Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) (*per curiam*). Thus, unless Petitioner's right to a direct appeal is restored, he has no apparent chance to challenge his sentence under Booker. Petitioner's efforts in this collateral proceeding to regain the right to a direct appeal is too little, too late.

7

In sum, the Court concludes that Petitioner did not instruct Mr. Rossman to file a direct appeal. The Court now turns its attention to the remaining stated grounds for relief in Petitioner's § 2255 motion.

**B.     Barred Claims**

    **1.     Procedural Bar**

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005)(*per curiam*)(citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*)(citation omitted).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987). Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. Montemoino, 68 F.3d at 417. However, despite these restrictions on raising previously available challenges, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro v. United States, 538 U.S. 500, 509 (2003).

Therefore, other than an ineffective assistance of counsel claim, if a ground for relief was available on appeal, the district court may not consider the ground under § 2255 unless

the petitioner can establish (1) cause for not raising the ground on appeal, and (2) actual prejudice resulting from the alleged error. United States v. Frady, 456 U.S. 152, 167-68 (1982); see also Montano, 398 F.3d at 1280. Alternatively, § 2255 review may be had under the "fundamental miscarriage of justice" exception, under which the extraordinary case must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 495-96 (1986); see also Montano, 398 F.3d at 1280.

As Petitioner did not file a direct appeal concerning any of the remaining issues in his § 2255 motion, these issues are procedurally barred in this § 2255 proceeding unless Petitioner can show cause and actual prejudice for his failure, see Frady, 456 U.S. at 167, or can otherwise meet the actual innocence exception recognized in Murray, 477 U.S. at 495-96. Notably, a showing that an attorney's performance was constitutionally deficient, coupled with a showing of prejudice, can satisfy the cause and prejudice standard and thereby excuse a procedural default. Reece v. United States, 119 F.3d 1462, 1468 (11th Cir. 1997). Petitioner has, therefore, cloaked these remaining claims under the auspices of an ineffective assistance of counsel claim.[4] Memo., p. 25. However, before turning to the issue of effective assistance of counsel, the Court first addresses Petitioner's claim that he did not enter a knowing and voluntary guilty plea because if his plea was, in fact, constitutionally entered, Petitioner faces the additional hurdle that all claims up to the time of the plea, save

---

[4]As discussed *supra*, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro, 538 U.S. at 509.

jurisdictional claims, are waived.  See Tollett v. Henderson, 411 U.S. 258, 266-67 (1973);

Stano v. Dugger, 921 F.2d 1125, 1150 (11th Cir. 1991).

### 2.    Bar Imposed by Knowing and Voluntary Guilty Plea

Once a guilty plea becomes final, unless the record demonstrates that the sentencing

court lacked the power to enter the conviction or impose the sentence, a petitioner may only

challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563,

574 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court

may not accept a guilty plea without an affirmative showing on the record that the plea was

intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh

Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea
> of guilty be knowingly and voluntarily entered because it involves a waiver
> of a number of the defendant's constitutional rights."  A plea of guilty
> "cannot support a judgment of guilt unless it was voluntary in a constitutional
> sense."  Aside from the obvious involuntariness of a coerced plea, the
> Supreme Court has identified two other ways that a defendant's guilty plea
> may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused
>> does not understand the nature of the constitutional
>> protections that he is waiving, or because he has such an
>> incomplete understanding of the charge that his plea cannot
>> stand as an intelligent admission of guilt.  Without adequate
>> notice of the nature of the charge against him, or proof that he
>> in fact understood the charge, the plea cannot be voluntary in
>> this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement
> is not satisfied unless the defendant receives real notice of the true nature of
> the charged crime: "[C]learly the plea could not be voluntary in the sense
> that it constituted an intelligent admission that he committed the offense
> unless the defendant received 'real notice of the true nature of the charge

against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted).

Petitioner's claims in support of his challenge to his guilty plea include allegations that Judge Bowen: failed to place him under oath and ask him about the basis for his guilty plea, failed to explain the nature and elements of the offense to which he was pleading guilty, and failed to advise him of the consequences of a guilty plea, including the constitutional rights waived by a guilty plea.[5] Memo., p. 22-23  These claims are clearly baseless, as they are affirmatively contradicted by the Rule 11 Transcript.  CR 303-014, doc. no. 34, pp. 3 (oath administered), 5 (charge read and explained), 6-8 (description of rights given up and consequences of guilty plea), and 10-14 (factual basis for guilty and acknowledgment of guilt without modification to factual basis); see also doc. no. 5, Gov't Supp. Rsp. to § 2255 motion, pp. 7-13 (quoting on the record statements from guilty plea proceedings demonstrating falsity of Petitioner's current allegations).

It is clear that Judge Bowen provided detailed information to Petitioner about the charge to which he was pleading guilty and the consequences thereof, and Judge Bowen gave Petitioner numerous opportunities to ask questions and/or correct the record. Petitioner gave no indication of any confusion or error. Moreover, Petitioner signed a statement attached to the plea agreement in which he acknowledges that he had read and understood the plea agreement, a document which thoroughly recounted the factual basis for the guilty plea and acknowledged that the distribution of sixty (60) grams of crack cocaine would be taken into

---

[5]Petitioner's allegations concerning defects with the indictment that should have been "corrected" by Judge Bowen are discussed - and discredited - in Part II(C)(1).

11

account by Judge Bowen at sentencing; the plea agreement also advised Petitioner of the consequences of a guilty plea, including the constitutional rights waived by a guilty plea. CR 303-014, doc. no. 25, pp. 7-8, 10-12. Contemporaneous, on-the-record statements made by a criminal defendant when pleading guilty carry substantial weight in the assessment of the voluntariness of a guilty plea and "constitute a formidable barrier" in any later collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 74 (1977). Petitioner offers nothing in this collateral proceeding to support his contention that his guilty plea was not knowing and voluntary, and therefore, he is not entitled to relief on this claim. Thus, all non-jurisdictional, pre-plea issues are barred from review in these proceedings.[6]

Mindful of the numerous procedural hurdles outlined above, the Court now turns its attention to the standard for analyzing whether Petitioner received constitutionally effective assistance of counsel.

## C.    Effective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must meet a two-part test. Petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984); see also Tollett, 411 U.S. at 266 ("If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal

---

[6]The Court is aware that Petitioner included claims under the heading of challenging the voluntariness of his plea about a defective indictment and prosecutorial misconduct in pursuing the case under a defective indictment. Memo., pp. 28-29. However, those claims do not go to Petitioner's understanding of the charges against him and his voluntary agreement to plead guilty. Therefore, the Court addresses those claims under separate heading, *infra*.

cases.'"). In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Strickland, 466 U.S. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an

13

infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable - - is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, see Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990), the Court will review the merits of the claims underlying Petitioner's claims of ineffective assistance of counsel that remain.

### 1. Prosecution Under "Defective" Indictment that Resulted in Sentencing Based on Improper Drug Quantity

Several of Petitioner's grounds for relief stem from his contention that he was improperly sentenced based on drug quantities that were not a part of the one count in the indictment - Count 2 - to which Petitioner pleaded guilty. Petitioner complains that the indictment was defective because it "did not charge all the elements of § 841(a)(a), to wit 59.8 grams of cocaine base (crack) in the indictment." Motion, p. 5. Petitioner also

14

complains that the indictment "was duplicity and multiplicity" in that it charged two or more separate crimes in a single count and charged a single offense in more than one count of the indictment. Memo., pp. 5, 12-13. Petitioner contends that the prosecutor filed a defective indictment that did not charge the total amount of drugs for which he was sentenced and then constructively amended the indictment to ensure that he was sentenced for 59.8 grams of crack cocaine; Petitioner makes the same argument against the U.S. Probation Officer preparing a PSI that recommended sentencing based on 59.8 grams of crack cocaine rather than based on the drugs involved in the count to which he pleaded. Id. at 17-21. The trial court allegedly erred by allowing these errors with the indictment to go uncorrected. Id. at 22-23.

The bulk of Petitioner's claims concerning drug quantity (id. at 31) rely on the Blakely, Booker/ Fanfan, and Apprendi cases to contend that he was improperly sentenced based on a procedure that allowed his sentence to be enhanced based on all relevant conduct, not just the drug amount involved in Count 2.[7] In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). In Blakely v. Washington, 542 U.S.–, 124 S. Ct. 2531 (2004), decided after Petitioner's sentencing on April 30, 2004, the Supreme Court revisited the rule of Apprendi to determine that a sentence that was

---

[7]As to the argument that the indictment was defective because it did not charge a specific amount of drugs, the government correctly points out that in the Eleventh Circuit, the specific quantity of drugs for which a defendant is held accountable is not an element of the crime charged. United States v. Clay, 376 F.3d 1296, 1301 (11th Cir. 2004).

enhanced under the State of Washington's sentencing guidelines based on facts found by the sentencing judge and not the jury violated the defendant's Sixth Amendment rights. See 124 S. Ct. at 2538. This principle was applied to the federal Sentencing Guidelines in Booker v. United States, 543 U.S.–, 125 S. Ct. 738 (2005).

However, at the time Petitioner was sentenced, the rule in the Eleventh Circuit was that Apprendi did not apply to the consideration of relevant conduct under the Sentencing Guidelines. United States v. Harris, 244 F.3d 828, 830 (11th Cir. 2001). "Because Apprendi only addresses facts that increase the penalty for a crime beyond the statutory maximum, it does not apply to those findings that merely cause the guideline range to shift within the statutory range." United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001) (en banc).[8] The relevant conduct considered by Judge Bowen did not increase Petitioner's penalty beyond the statutory range of five to forty years applicable to Count 2 of the indictment. See CR 303-014, doc. no. 2. Moreover, the Blakely decision was not handed down until after Petitioner's conviction and sentence became final, and the principle announced in that case was not extended to the federal Sentencing Guidelines until 2005. Booker, 543 U.S.–, 125 S. Ct. 738. Thus, the "errors" which Petitioner now alleges were not grounds for objection at the time of Petitioner's case was before Judge Bowen, and there would have been no valid basis for challenging a sentence based on all of Petitioner's relevant conduct.

Likewise, Petitioner's duplicity and multiplicity arguments must fail. "A count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." United

---

[8]Of course, this analysis changed in the wake of the Supreme Court's ruling in Booker, 125 S. Ct. 738.

States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997) (citation omitted). The indictment here charged Petitioner in three separate counts with three discrete distributions of crack cocaine on three separate dates (February 20, 28 and March 8, 2001). Therefore, it was not duplicitous. CR 303-014, doc. no. 1.

Nor was the indictment multiplicitous. "An indictment is multiplicitous if it charges a single offense in more than one count." United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995). As the former Fifth Circuit explained, "to see whether separate offenses may be carved out of a separate incident, the offenses should be examined to see whether each requires proof of a fact that the other does not." United States v. Chrane, 529 F.2d 1236, 1238 (5th Cir. 1976). Here, the indictment charged a separate and distinct event in each count, and each count required proof of an additional fact that the others did not - *e.g.*, the date the crack distribution allegedly occurred; therefore the indictment was not multiplicitous. Cf. United States v. Maldonado, 849 F.2d 522, 524 (11th Cir. 1988) (charging separate § 841(a)(1) offenses in indictment not multiplicitous where each count required proof of a different drug quantity in different counties).

In sum, as Petitioner's arguments about the indictment and resultant sentencing are without merit, he can show no prejudice from Mr. Rossman's failure to raise these issues, and he is not entitled to relief on these claims.

### 2.     Remaining Ineffective Assistance of Counsel Claims

Petitioner's remaining ineffective assistance of counsel claims include allegations that Mr. Rossman failed to properly prepare for the case, did not object to errors with the indictment (primarily with respect to his sentencing based on the distribution of 59.8 grams

17

of crack cocaine- an amount that was not specifically alleged in the indictment), did  not

negotiate a favorable plea agreement, and did not advise Petitioner about the merits and/or

consequences of entering a guilty plea.[9]  Memo., pp. 8-9, 24-27.  Not only has Petitioner

failed to establish that Mr. Rossman's performance was deficient in any of the ways alleged,

but he has also failed to establish that he was prejudiced in any way.[10]

　　　As to the allegations that Mr. Rossman failed to prepare a defense by performing an

adequate investigation prior to the guilty plea proceedings or otherwise file appropriate pre-

trial motions, Petitioner's allegations are notably deficient of any details as to what defenses

---

[9]Petitioner also complains that his attorney threatened and coerced him into entering a guilty plea, to include threatening Petitioner with a life sentence. Memo., p. 25. However, at another point in his § 2255 papers, Petitioner claims that it was the prosecutor who threatened him with a life sentence. Id. at 18. At the evidentiary hearing, Petitioner clarified that his allegations were based on his belief that he was not eligible for the forty-year sentence identified in the government's penalty certification - a belief that was erroneous. In any event, Petitioner also acknowledged at the hearing that he told Judge Bowen at his guilty plea proceedings that he had not been threatened or coerced into pleading guilty. The transcripts confirm this. CR 303-014, doc. no. 34, p. 8. As noted above, contemporaneous, on-the-record statements made by a criminal defendant when pleading guilty "constitute a formidable barrier" in any later collateral proceedings. Blackledge, 431 U.S. at 74. Thus, Petitioner's muddled allegations on the issue of being threatened into pleading guilty, particularly in light of the Court's prior conclusion that the plea was knowing and voluntary, cannot now form the basis for relief.

[10]The Court re-iterates its conclusion, explained in detail above, that Petitioner is simply mistaken in his belief that the law required that he be sentenced based solely on the amount of drugs involved in the count of the indictment to which he pleaded guilty. Thus, Petitioner's adherence to the position that he should only have been eligible for a sixty-three (63) month sentence based on the distribution of five grams of crack cocaine (see, e.g., Memo., p. 18) does not automatically establish that Petitioner was prejudiced by Mr. Rossman's performance that resulted in an 80-month sentence. Moreover, the drug quantity involved in Count 2 to which Petitioner pleaded guilty was 27. 2 grams of crack cocaine. PSI ¶ 5. The indictment charged distribution of 5 or more grams of crack cocaine in Count 2. CR 303-014, doc. no. 1. Thus, Petitioner's calculation of a possible 63-month sentence based on distributing only 5 grams of cocaine is itself based on a faulty premise.

were available that were not pursued, (Memo., pp. 8, 24), and the docket reveals that Mr.

Rossman filed eight (8) pre-trial motions. See CR 303-014. Mr. Rossman testified at the

evidentiary hearing that he had shared the available discovery with Petitioner. Notably, there

were three different tapes of Petitioner engaging in a drug transaction with a confidential

informant ("CI"), and the CI was available to testify at trial. According to Mr. Rossman's

testimony, the evidence against Petitioner was overwhelming.[11]   Absent any information as

to what defenses were available that were not pursued, Petitioner is not entitled to relief.

That is, counsel cannot be faulted for not pursuing matters about which Petitioner did not

inform him. Holladay v. Haley, 209 F.3d 1243, 1251-52 (11th Cir. 2000); Collins v. Francis,

728 F.2d 1322, 1349 (11th Cir. 1984)(per curiam).  Moreover, conclusory allegations of

ineffective assistance of counsel - such as the type now offered by Petitioner that are devoid

of specifics - are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992).

Likewise, Petitioner's contention that Mr. Rossman failed to negotiate a favorable

plea agreement is clearly belied by the record. The U.S. Probation Officer had calculated a

---

[11]The Supreme Court has also commented on the function of counsel in situations where, as here, a plea bargain is a viable option:

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. . . . Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

Tollett, 411 U.S. at 267-68 (citations omitted).

19

sentencing range under the Sentencing Guidelines of 108 to 135 months. PSI ¶ 64. Mr.

Rossman negotiated a plea whereby Petitioner was eligible for an acceptance of responsibil-

ity reduction, as well as a reduction for his timely notification of his intention to plead guilty,

resulting in a sentence of 80 months of imprisonment - 28 months below the low end of the

sentencing range under the Guidelines.

Petitioner's claim that he was not kept abreast of relevant information in his case or

otherwise advised about the ramifications of entering a guilty plea is also belied by the

record. Although there is a dispute about the exact number of times Mr. Rossman visited

with Petitioner prior to entry of the guilty plea, both parties seem to agree that it was several

times.[12] Petitioner was also made aware that the government had tapes of Petitioner's

transactions with the CI. Furthermore, Petitioner acknowledged reviewing the plea

agreement with Mr. Rossman. There is simply no support for the contention that Petitioner

was not kept adequately informed of the developments in his case.

Finally, as to the argument that Mr. Rossman failed to offer advice and counsel about

the consequences of a guilty plea, the guilty plea transcripts confirm that Petitioner told

Judge Bowen that he had had enough time to discuss the case and prepare with Mr. Rossman;

Petitioner also agreed that he was "entirely satisfied" with Mr. Rossman's preparation and

handling of the case. CR 303-014, doc. no. 34, pp. 4-5. In addition, prior to accepting

Petitioner's guilty plea, Judge Bowen thoroughly reviewed the plea agreement, as well as the

---

[12]The guilty plea transcripts indicate that the visits numbered in the range of five or six. CR 303-014, doc. no. 34, p. 4. Moreover, Petitioner acknowledged at the evidentiary hearing that in addition to these face-to-face meetings, on at least one occasion, Mr. Rossman had accepted Petitioner's collect call from jail.

rights that would be waived by a guilty plea. Id. at 5-9. Judge Bowen also specifically informed Petitioner that the penalty for the charge to which he was about to plead guilty was "not less than five years in prison and not more than forty years in prison." Id. at 5. Thus, even if the Court were to assume for the sake of argument that despite Petitioner's testimony under oath to Judge Bowen, and despite his signed attestation on the plea agreement that he understood the charges, his rights as well as the consequences of giving up those rights, along with the penalty he faced, and that he had discussed his case with Mr. Rossman, Petitioner still can show no prejudice.

Stated otherwise, prior to Petitioner entering his guilty plea, Judge Bowen specifically told Petitioner about the information that Petitioner now claims Mr. Rossman failed to convey, and Judge Bowen confirmed that Petitioner, having all of this information in mind, wanted to proceed with his guilty plea. Id. at 14. Moreover, Petitioner also attested with his signature to his plea agreement - signed approximately a month and a half before Judge Bowen accepted the guilty plea - that he understood the charges and penalties, that with the advice of counsel he had weighed the relative benefits of a trial versus a guilty plea, and that the agreement had been reached with his permission. CR 303-014, doc. no. 25, pp. 10-13. Petitioner's belated, self-serving allegations about a lack of information from Mr. Rossman simply do not ring true in light of the record evidence.

In sum, Petitioner has not established that he was prejudiced in any way by Mr. Rossman's performance, and he is not entitled to relief on these claims.

### III. <u>CONCLUSION</u>

For the reasons stated above, the Court **FINDS** that Petitioner did not ask his attorney to file a notice of appeal and that the other stated grounds for relief stated in Petitioner's motion to vacate, set aside, or correct his sentence cannot form the basis for relief in this collateral proceeding. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the government.

SO REPORTED and RECOMMENDED this 5th day of October, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE